WOOLSEY WAPLES, Administrator of Charles Rider, Surviving Child of George Rider and Legatee of Wilson Rider, v. JOSEPH AYDELOT and MARY, his Wife, Executrix of Charles Rider, who was Executor of Wilson Rider, the Testator, and CHARLES MOORE and LEVIN MOORE, Executors of George Moore, and SARAH MOORE.

Court of Chancery.  Sussex.  March 11, 1818.

*Ridgely's Notebook II, 66.*

*Robinson* reads the bill.

That Wilson Rider in Maryland made his will January 2, 1784, and bequeathed to his wife, Charity Rider, "all my Negroes during her life, and at her decease to go to my children and grandchildren as hereafter in this my will is expressed" and afterwards he bequeathed, thus, "Item. My will and desire is that the residue or ⅔ of my personal estate not above bequeathed be equally divided amongst my son John Rider's children, and George Rider's children, and my daughter Sarah Moore and my daughter Mary Moore, so that John Rider's children may have ¼ part among them, and my son George Rider's children ¼ part among them, and Sarah Moore ¼ part, and Mary Moore the other ¼ part, and at the decease of my wife Charity Rider, all my Negroes (except Jacob) to be divided among the same, and in the same man-

ner, John Rider's children excepted in the Negroes." Charles Rider, executor. Will proved February 2, 1784.

Charles Rider possessed himself of the whole estate of testator, more than sufficient to pay debts. He assented to legacies, and promised they should be delivered over. That Charles Rider August 26, 1785, passed administration account, deducted legacies, to wit, Negroes and all sums to be deducted, and balance in his hands £131.11.10. But balance should have been greater. There was due to the children of George Rider, £32.17.11½. Charles Rider not having paid children of George Rider, December 1, 1801, made his will, and made his wife, Mary Rider, executrix. Will proved December 15, 1801, and letters testamentary granted to Mary Rider.

Mary Rider possessed herself of the estate of Charles Rider more than sufficient to pay his debts. April 19, 1803, Mary Rider passed administration account; balance in her hands $844.91. October 1, 1803, she passed another account; balance in her hands $574.48, to be applied to payments of his debts, and the legacies aforesaid. Mary, executrix of Charles, was allowed to retain £10.19.3 of Charles Rider, child of George Rider, and was not ⅓ of the sum due to said Charles of said residue.

That said Mary Rider married Joseph Aydelot. They are liable to pay to complainant the share of the residue of Wilson Rider bequeathed to the children of George Rider as aforesaid.

That Negro Bet bequeathed as aforesaid to Charity, legatee of Wilson Rider, had several children during the life of Charity. Charity Rider died about 1796.

Sarah Moore, daughter of Wilson Rider and a legatee of said Wilson, having married with and being the wife of George Moore, the said Negroes bequeathed as aforesaid and their increase during the life of said Charity as aforesaid became the property and vested in the children of George Rider, the aforesaid Sarah, or the said George and Sarah in right of said Sarah, and the said Mary Moore, legatees as aforesaid, to be held in common, and to be divided among them according to the provisions of said will of Wilson Rider, viz: ⅓ part of said Negroes and increase to George Rider's children; ⅓ part to said George Moore and Sarah, his wife; ⅓ part to said Mary Moore.

That on death of said Charity Rider, George Moore took possession of Negroes and increase bequeathed as aforesaid. Several of the children (the increase) had advanced in age, and Moore became bound (in law) to hold them for the other legatees. That soon after, Mary Moore took Negro Charles and other

of said Negroes in full, her ⅓. And George Moore and Sarah, his wife, legatee as aforesaid, held in trust for the use and benefit of himself and wife, and the children of George Rider, Negroes Bet and Isaac, and the increase of said Bet. That said George Moore and Sarah his wife held said Negroes from that time (the death of Charity) until the death of said George. Said Negro Bet had an increase of several children, whose names are unknown to complainant, and became of value and produced to George, or to his estate, considerable money by sales or otherwise. That George Moore and Sarah, his wife, received benefit of Negroes from death of Charity (viz: of Negro Bet, $24 a year; for Negro Isaac, $60 a year; and for the children of Negro Bet, by sale or otherwise, $500) to an equal half part whereof the children of George Rider became entitled.

George Moore made will July 14, 1805, and made Charles Moore and Levin Moore executors, and died. Sarah, his wife, survived him. He left estate more than enough to pay debts. Letters testamentary granted to Charles Moore and Levin Moore. Charles Moore, and Levin Moore, or said Sarah, legatee as aforesaid, have continued to hold said Bet and Isaac, and the increase of said Bet, and to take the value of their labor, until a few years past Negro Isaac was sold for $300, to all which complainant is entitled to one half part or a share.

That Wilson Rider, John Rider, and Charles Rider were [the] only children of George Rider, at death of testator Wilson Rider, that Wilson and John died without issue, leaving their brother Charles to survive. That the mother of said Charles Rider was mother of complainant W. Waples. February, 1802, Charles Rider died intestate. April 21, 1802, letters of administration on Charles Rider's estate granted to Woolsey Waples.

---

*Answer of Charles Moore, Levin Moore, and Sarah Moore.*

Admit will of Wilson Rider, bequest, letters to Charles Rider; do not know amounts of personal estate, nor whether administration account is a true one. Believe that Charles Rider accounted for Wilson Rider's estate. Sarah Moore believes that Charles Rider, executor of said Wilson, delivered over to Charity, the widow and legatee of Wilson Rider, the Negroes bequeathed to her. She believes the children of George Rider were paid their shares of the residue of said Wilson's estate by Charles, executor, except of Negroes. That she heard George Rider say he did not consider Charles Rider was his son, etc. Negro Harry was sixty years of age at death of Wilson. They all say Charles was not

son of said George Rider. Will of George Rider dated November 18, 1780, and devised his estate to his sons, Wilson and John, and 1/ to his little son, Charles. Wilson, son of George, made will October 17, 1785, made executor; will proved. John, son of George, made a will and appointed executor; will proved.

Insist that Charles cannot claim the estate of Wilson Rider, the grandfather of these defendants, because the defendants do not represent the estate of Wilson Rider (the first testator), nor of Wilson, nor John, the brothers of Charles.

That complainant is not entitled to shares of Wilson and John, brothers of Charles. Negroes delivered to Charity Rider, except Harry who died short time after the testator. And Bet had issue Bob, Leah, and Samuel.

Charity died August 24, 1784, when Bob was nine years old, Leah six years, and Samuel, two. That after death of Charity Rider, said Mary Moore and this defendant, Sarah Moore, the wife of George Moore, being only surviving children of Wilson Rider the testator, to and among whom Negroes were bequeathed, Mary and George Moore after death of Charity divided the Negroes, both originally bequeathed (those that were living) and their increase, between said George Moore and Sarah Moore equally. That there remained [none] of said Negroes. That said George and Sarah divided the Negroes between them, according to laws of Maryland.

George Moore made will July 14, 1805, and proved August 30, 1805; Charles Moore and Levin Moore, his executors. He bequeathed his Negroes, those which he held under Wilson Rider the original testator, and which came to him by his wife, Sarah. And the said executors delivered up the Negroes bequeathed by their father George to the legatees. They settled his estate and had no notice of this claim.

Sarah Moore sold Isaac to William Huffington for $100 to serve one year and eight months. She holds other Negroes and insists that she has a right to hold them. They insist on the Act of Limitation passed February 4, 1792 [2 Del.Laws 1031].

---

Answer of Joseph Aydelot and Mary, his wife, late Mary Rider, who was executrix of Charles, who was a son and executor of Wilson Rider, the first testator.

---

*Mr. Robinson* reads papers and depositions on part of complainant.

August 26, 1785. Administration account passed by Charles Rider, executor of Wilson Rider. Balance in hands of Charles Rider. This account was passed in Maryland and is called a final account.

October 1, 1803. Administration account of Mary Rider, executrix of Charles Rider, son of Wilson Rider. This account retains the money due Charles Rider, £10.19.3.

November 9, 1805. Inventory and appraisement of George Moore's estate, amount $2097.34. Negroes appraised in this estate were children of Betty, willed by Wilson Rider and Isaac.

| | | |
|---|---|---|
| Isaac ([appraised] at) | [$]100 | |
| Betty | 20 | |
| Littleton, son of Betty | 160 | Born after death |
| Milley, daughter of Betty | 80 | of Charity |
| Major | 100 | |

September 29, 1807. Administration account on the estate of George Moore, passed by Levin Moore and Charles Moore, executors of George Moore. Balance $1156.45. These Negroes were disposed of by the executors of George Moore to his legatees. (*Mr. Cooper* says that they had no notice of this claim.)

[The will of] George Rider, father of Charles, is dated November 18, 1780, proved December 2, 1783. He there speaks of "his little son born of his wife Elizabeth Rider, 1/ sterling."

Charity died in the year 1794. Letters granted on Charles Rider, son of George, April 21, 1802. Wilson Rider, the testator, died in 1784; his son Charles executor.

Deposition of witness for complainant: Robert Lacey. Depositions for defendants: Isaac Vinson, 58 years; Waitman Kinnikin.

---

*Robinson* for complainant. The Act of Limitation will not bar. These legatees were tenants in common. Two of them, after the death of Charity, took all the Negroes; ⅓ of the share given to George's Sons belonged to Charles. Then he was tenant in common, and, those tenants in common holding the share of this tenant, the claim cannot be barred. Charles Rider, one of tenants in common, died 1802. George Moore, the other tenant in common by his wife, died in 1805. They presume that George Moore paid to Charles Rider or to his administrator, not likely to Charles Rider, for he died too soon after he came of age. Then from 1802 to 1805 not likely to be paid. But it is said when a person will stand by and see an estate distributed he cannot

recover. [4] Bro. [C.C. 257.] But where estate is given for life, and tenant for life dies, and his heirs distribute without giving notice of death of tenant for life, it is a fraud. But this is a claim for a legacy; and let who will get the possession, still it is a legacy, and limitation will not bar a legacy. Limitation cannot apply against the representative of legatee, more than against legatee himself.

*Cooper* for defendant. Charles Rider, executor of Wilson Rider, could be the only trustee. He performed by delivering them over to Charity. After she died, who could be a trustee? Mary Rider was not and could not be a trustee. She was widow and executrix of Charles, the executor, but the Negroes never came to her hands. This is but the common case of one person taking possession of Negroes devised to him and to others. They did not take as trustees. As tenant in common there was a complete holding against the Charles, son of George. It is the naked case of one tenant in common holding against others. Woolsey Waples took letters on Charles Rider, 1802. George Moore died between July 14 and August 30, 1805. Thus before George Moore died the administrator of Charles suffered three years to elapse during George Moore's lifetime. George Moore could not give notice to Charles Rider when Charity died, for he was under age. We received these Negroes as legatee in our own right, and for ourselves never to hold for the others, for Charles Rider.

*Robinson* for complainant. 4 Bro.C.C. 257. *Hercy v. Dinwoody*. Where a party has laid by for a great length of time and suffered an estate to be distributed, he shall not have an account. 1 Wash. 145. Sarah Moore, the widow of George Moore, which said Sarah was one of the legatees, and by whom George Moore received the legacy, received from George Moore more than the value of this legacy.

*Mr. Cooper.* The case in Brown has no relation to the suit. That is the case of trustees in a will. But we are not trustees. George Moore moved here, brought the Negroes here and died here. I rely but upon the Act of Limitation of this state.

———

This case was kept under consideration till July, 1818, when THE CHANCELLOR delivered the following opinion.

The testator, Wilson Rider, bequeathed the Negroes to his wife, Charity, for life, and after her death [1] (Negro Jacob ex-

---

[1] At this point, *Ridgely's Notebook, II, 71*, the account of this case is interrupted; the Chancellor's opinion is begun anew at *89*.

cepted) to George Rider's children, and to his daughter, Sarah Stone, and his daughter, Mary Moore. Charles Rider, the executor, delivered the Negroes to Charity according to the bequest in the will; and therefore the complainant has no demand against Aydelot and wife, the executors of Charles Rider, who was executor of Wilson Rider, on account of these Negroes.

As to the £10.19.3, the share of Charles, son of George, of the balance of two-third parts of the personal estate of Wilson Rider, Aydelot and wife, executors, are liable, as they admit in their answer; for there was that sum of the personal estate of Wilson Rider due to Charles, the intestate of Waples, in the hands of Charles, the executor. And he left assets in the hands of Mary, his executrix, now wife of Aydelot, sufficient to pay it. But Waples is not entitled to interest on this money. He called on Mrs. Rider, now Mrs. Aydelot, early after his administration, and she professed her willingness to pay the money, if he would show, or satisfy her, that he was entitled to receive it; but this he did not do. If he had exhibited his letters of administration, he would have removed all doubts; but as he was a stranger, living in Delaware, and acting under letters of administration granted here, and she residing in Maryland, and the estate being there, and being adjusted and settled there, she certainly was not in fault for not paying him, for if she had paid the money erroneously, she would still have been liable. From that time, which was in 1802, until 1806, he never made any demand, still knowing that she had the money and was willing to pay it, being assured that it would be properly paid. The £10.19.3 must be decreed to be paid to the plaintiff, but without interest, for the above reasons.

With respect to the Negroes, it appears that George Moore, in right of Sarah, his wife, and Mary Moore, took them after the death of Charity, the legatee for life. These Negroes were given to Sarah Moore and Mary Moore, and to the children of George Rider after the death of Charity, but the children of George Rider got no part of them; and this is a suit brought by Waples, administrator of Charles Rider, son of George, for his part of the Negroes, against Charles Moore and Levin Moore, the executors of George Moore, who, in right of his wife, Sarah, possessed himself of a moiety of the Negroes, and against the said Sarah Moore, daughter and legatee of Wilson Rider, and widow of said George Moore, deceased. Mary Moore, the other daughter and legatee of Wilson Rider, died out of the state, and no administration has been taken of her estate; therefore there is no party in this suit a representative of said Mary. If George Moore took more than

he was entitled to in right of his wife, Sarah, she cannot be answerable to Waples, the representative of Charles Rider, therefor. No part of Charles' share of the Negroes went into her hands while she was sole; and although her husband, George, claimed and acted in her right, she cannot be responsible for any portion of the Negroes which he obtained, beyond the share he was entitled to in her right. Since the death of George Moore, all his personal estate went into the hands of his executors, Charles Moore and Levin Moore. Sarah then cannot be called on by the administrator of Charles Rider, son of George.

It only remains to consider the liability of Charles Moore and Levin Moore, the executors of George Moore. George Moore and Mary divided the Negroes between them after the death of Charity. No regard was paid to the interest of George Rider's children, or child; and it seemed to be considered that Sarah and Mary Moore were wholly entitled to them. George Moore died in the year 1805. Charles Moore and Levin Moore, his executors, have fully administered and settled his estate and closed their administration without notice, as they allege, of any claim or interest of Charles Rider òr his representative, Waples, or that any demand had ever been made of any of these Negroes. No notice or demand is proved. Waples administered on Charles Rider in 1802. He never sued or demanded these Negroes, or any of them, of George Moore in his lifetime, nor of the executors of George Moore until this bill was filed in 1816. The Act of Limitations now bars him; or rather, I would say that the equity of the administrator of Charles Rider is rebutted by the superior equity of the defendants, executors of George Moore, arising from the laches of the complainant. Waples suffered fourteen years to elapse after the letters of administration were granted to him, and ten or eleven after the death of George Moore. The administration account of George Moore's estate was passed in 1807, eight or nine years before the bill was filed and the estate disposed of according to his will, it is to be presumed. Now, after this length of time and the settlement of the estate of George Moore and the disposition of the same to his legatees, without any notice or demand whatsoever, it would be doing injustice to the executors to make them responsible. How could they be reimbursed, having had no notice of the claim? Upon this principle, the bill as to these defendants should be dismissed. If any wrong is done to complainant, his own negligence has produced it. It would be manifestly unjust, at this late day, to put the executors to a suit against the legatees of George Moore to reimburse them on account of this claim of Waples, administrator of Charles Rider.

Bill dismissed as to executors of George Moore and as to Sarah Moore. Decree payment of £10.19.3 by Aydelot and wife. Complainant pays his own costs and costs of George Moore's executors and of Sarah Moore. Aydelot and wife pay their own costs.